**RAINES FELDMAN LITTRELL LLP**
Lauren J. Katunich (State Bar No. 227599)
　　*lkatunich@raineslaw.com*
Matthew D. Pate (State Bar No. 317136)
　　*mpate@raineslaw.com*
1800 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone:  (310) 440-4100
Facsimile:  (310) 691-1943

Attorneys for Defendants
THE LUBRIZOL CORPORATION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT TREVINO, an individual,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE LUBRIZOL CORPORATION, a corporation; CHEMTOOL INCORPORATED, a corporation; KEVIN OAKLEY, an individual; PRESTON "DOE NO. 1"; and DOES 2 through 35; inclusive,<br><br>　　　　Defendants. | Case No.: _____<br><br>**DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446**<br><br>*[Filed concurrently with the Declaration of Lauren Katunich, Notice of Interested Parties; Civil Case Cover Sheet]* |

DEFENDANT'S NOTICE OF REMOVAL

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA, PLAINTIFF VINCENT TREVINO, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant THE LUBRIZOL CORPORATION ("Lubrizol" or "Defendant") hereby removes the above-entitled action, Case No. BCV-23-101662, from the Superior Court of the State of California, County of Kern, to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. sections 1332, 1441, and 1446.

This Notice is based upon the original jurisdiction of the federal district court over the parties under 28 U.S.C. section 1332 ("Section 1332") because the parties are of diverse citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. section 1332. In establishing diversity, Defendant alleges that Defendants Preston "DOE NO. 1" and Kevin Oakley ("Individual Defendants") have been fraudulently joined as set forth below and their citizenship should be disregarded.

In support of its Notice of Removal, Defendant states the following:

## STATEMENT OF JURISDICTION

1. This Court has original jurisdiction under 28 U.S.C. section 1332(a)(1), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), because it is a civil action wherein the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and it is between "citizens of different States" because Individual Defendants have been fraudulently joined to defeat diversity.

2. As set forth below, this case meets all of Section 1332's requirements for removal and is timely and properly removed by the filing of this Notice.

3. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c)(1)(2), 1391, and 1446.

## PLEADINGS, PROCESS AND ORDERS

4. This lawsuit arises out of Plaintiff VINCENT TREVINO's ("Plaintiff") employment with Chemtool Inc. On May 30, 2023, Plaintiff filed a Complaint in the Superior Court of the State of California, County of Kern, styled *VINCENT TREVINO, an individual v. THE LUBRIZOL CORPORATION, a corporation; CHEMTOOL INCORPORATED, a corporation; KEVIN OAKLEY, an individual; PRESTON "DOE NO. 1" and DOES 2 through 35, inclusive*, bearing Case No. BCV-23-101662 (the "Complaint"). The Complaint asserts the following ten causes of action: (1) discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) failure to prevent discrimination in violation of FEHA; (3) retaliation in violation of FEHA; (4) failure to engage in the interactive process; (5) failure to provide reasonable accommodation; (6) Labor Code §§ 98.6 and 1102.5; (7) wrongful termination in violation of public policy; (8) intentional infliction of emotional distress; (9) violation of California Family Rights Act ("CFRA")/retaliation related to CFRA leave; and (10) unlawful, unfair, and/or fraudulent business practices.

5. On June 2, 2023, Plaintiff served Defendant with copies of the Summons, Complaint, and Civil Case Cover Sheet. Attached as **Exhibit A** to the concurrently filed Declaration of Lauren Katunich ("Katunich Decl.") is a true and correct copy of the Summons, Complaint, and Civil Case Cover Sheet.

6. Pursuant to 28 U.S.C. section 1446(a), the documents attached to the Katunich Declaration as **Exhibits A** and **B** constitute all process, pleadings, and orders served upon Defendant Lubrizol or filed in this action by the parties. (Katunich Decl. ¶ 4.) To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed, issued, or served by any party in the Superior Court of the State of California, County of Kern. (*Id.*) To Defendant's knowledge, no proceedings related hereto have been heard in the Kern County

Superior Court. (*Id.*) Though Plaintiff has filed a proof of service of the Summons and Complaint with respect to Defendant Oakley, his consent to removal is unnecessary as he was fraudulently joined to defeat diversity. The remainder of the named Defendants, Chemtool and Preston "DOE No. 1," have not been served to Defendant's knowledge and are therefore not required to consent to removal.

### TIMELINESS OF REMOVAL

7. This Notice of Removal is timely. Under 28 U.S.C. § 1446(b), the notice of removal of a civil action must be filed within 30 days after service of the summons and complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint; receipt of summons and complaint is insufficient to trigger removal period). On June 2, 2023, the Complaint and Summons were served on Defendant.

8. Plaintiff caused the Summons and Complaint to be served on Defendant on June 2, 2023 by serving its agent for service of process CT Corporation System. (Katunich Decl. ¶ 3; **Exhibit B**) Pursuant to 28 U.S.C. section 1446(b), this Notice of Removal is therefore timely filed as it is filed within thirty (30) days after Defendant was effectively served with the Summons and Complaint and within one year after commencement of this action.

### DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. § 1332

9. Section 1332(a) provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. . . (1) citizens of different States[.]" This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to Section 1332(a), and may be removed to this Court by Defendant pursuant to 28 U.S.C. section 1441(b) because it is a civil action between citizens of different States and the

amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below.

10.  Plaintiff is, and on the date the Complaint was filed was, a citizen of California. (Katunich Decl., **Exhibit A**, Complaint ¶ 1.)

11.  For diversity jurisdiction purposes, a corporation is deemed a citizen of its state of incorporation and the state or foreign state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center," which is typically a corporation's headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

12.  At the time this action was commenced in state court, Defendant was, and still is, a corporation incorporated under the laws of the state of Ohio. Lubrizol's corporate headquarters and principal place of business are located in Wickliffe, Ohio. Thus, Lubrizol is a citizen of Ohio for purposes of diversity.

13.  Defendant Chemtool is owned by Lubrizol and was acquired by Lubrizol in August 2013. At the time this action was commenced in state court, Defendant Chemtool was, and still is, a corporation incorporated under the laws of the state of Delaware. Chemtool's corporate headquarters and principal place of business are located in Rockton, Illinois. Thus, Chemtool is a citizen of Delaware and Illinois for purposes of diversity.

14.  Plaintiff named Kevin Oakley ("Oakley") and Preston "Doe No. 1" ("Preston") as individual defendants in this case. However, as will be explained further below, Individual Defendants have not been properly joined and are sham defendants named by Plaintiff for purposes of avoiding removal to federal court. Their citizenship must therefore be disregarded for purposes of determining diversity jurisdiction and their consent to removal is unnecessary.

/ / /

15. The Complaint names as defendants "DOES 1 through 10, inclusive." Pursuant to 28 U.S.C. section 1441(b)(1), however, the citizenship of defendants sued under fictitious names must be disregarded for the purpose of determining diversity jurisdiction. 28 U.S.C. § 1441(b)(1). *See also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

16. As discussed in detail below, the amount in controversy in the Complaint exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, as required by Section 1332 (a).

## OAKLEY AND PRESTON WERE NOT PROPERLY JOINED, ARE SHAM DEFENDANTS, AND THEIR CITIZENSHIP MUST BE DISREGARDED FOR DIVERSITY JURISDICTION

17. Under 28 U.S.C. section 1441(b)(2), "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Here, neither Oakley nor Preston were properly joined. To the best of Defendant's knowledge, Preston has not been served with the Summons and Complaint.

18. The Ninth Circuit recognizes "two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. RR. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). Fraudulent joinder is established the second way if a defendant shows that an "individual [] joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Therefore, a party named in the action may be disregarded if that party's joinder is a "sham" or "fraudulent" so that no possible cause of action has been stated against that party. *Morris v.*

*Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

19.    This is an employment case alleging disability discrimination, retaliation, and wrongful termination. Here, no possible cause of action can be stated against Oakley or Preston as the only cause of action alleged against them is for intentional infliction of emotional distress ("IIED") as Plaintiff's supervisors in the scope of employment. (Katunich Decl., **Exhibit A**, Complaint ¶¶ 4-5, 20, 22, 26, 77-84.) California has established a high bar in order to pursue a claim for IIED, particularly in the employment context. Plaintiff must not only plead but must also prove: "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Hughes v. Pair*, 46 Cal.4th 1035, 1050–51 (2009). A defendant's conduct is "outrageous" only when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. "Ordinary rude or insulting behavior is not enough." *McCoy v. Pac. Mar. Assn.*, 216 Cal. App. 4th 283, 295 (2013). Conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Id*. California courts have routinely dismissed IIED cases on demurrer, concluding that the facts alleged do not amount to outrageous conduct as a matter of law. *See, e.g., Bock v. Hansen*, 225 Cal. App.4th 215, 233-35 (2014); *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1608–09 (2009); *Coleman v. Republic Indemnity Ins. Co.*, 132 Cal. App. 4th 403 (2005); *Ricard v. Pacific Indemnity*, 132 Cal. App. 3d 886, 895 (1982).

20.    Moreover, Plaintiff's experience of "severe or extreme emotional distress" must be pled with heightened particularity as mere allegations — like Plaintiff's in Paragraphs 78-82 of the Complaint — of "severe emotional distress," "mental anguish," "worry," "discomfort," and "anxiety" are

1   insufficient to establish a claim for IIED. *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1274–75 (E.D. Cal. 2012) ("The IIED claim makes sweeping references to 'anguish, embarrassment, anxiety, nervousness, humiliation, worry ... and shame' with no facts to support such symptoms or conditions. Ms. McKenna fails to offer meaningful support for the IIED claim to warrant[ing] the claim's dismissal."); *see also Hughes*, *supra*, 46 Cal.4th at 1051 ("[P]laintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of defendant's comments … do not comprise 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"). Plaintiff's failure to establish severe emotional distress with specific facts is an independent reason to disregard Plaintiff's IIED cause of action in addition to the already dispositive grounds set forth above and below.

21. With respect to *extreme and outrageous* conduct, a cause of action for IIED does not exist against individual defendant supervisors in an employment case if the challenged conduct arose in performance of duties within the scope of their employment. In that case, the IIED claim fails as a matter of law. The Complaint alleges that Oakley failed to assist Plaintiff following his alleged workplace injury and, in response to Plaintiff's request for medical care, simply stated, "you can do what you want." (Katunich Decl., **Exhibit A**, Complaint ¶¶ 4-5, 20, 22, 26, 77-84.) Plaintiff further claims that the Individual Defendants engaged in retaliatory conduct ultimately leading to Plaintiff's termination. (*Id*.) However, these allegations, even if assumed to be true, are insufficient to support a claim for IIED as a matter of law.

22. The meager factual allegations against the Individual Defendants indisputably fall short of meeting the necessary elements for IIED. While Plaintiff's allegations suggest that Oakley exhibited general apathy toward Plaintiff's purported workplace injury, including by not providing appropriate

workers' compensation paperwork, these allegations relate to routine workplace conduct demonstrating at most an insensitivity or negligence on Oakley's part. Even under the most generous interpretation of Plaintiff's alleged facts, they do not meet the demanding threshold required to establish the *extreme* and *outrageous conduct* necessary for an IIED claim. It cannot be the case that an IIED claim exists every time a supervisor fails to provide workplace injury paperwork or reacts indifferently to an employee injury, both of which occur every day in workplaces across the country. That is not the egregious conduct contemplated by an IIED claim.

23. The same is true with respect to the Complaint's assertion that the Individual Defendants "actively retaliated against [Plaintiff] by working to ensure that he would not return to work," and further, that they "discriminated against [Plaintiff] on the basis of his work-related injury, medical condition, disability, and other unlawful, discriminatory animus." (*Id.*) For decades, the California Supreme Court has made clear that claims for discrimination and retaliation cannot be maintained against individual defendants. See *Reno v. Baird*, 18 Cal.4th 640 (1998) (discrimination claims); *Jones v. The Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158 (retaliation claims). Dressing up the same allegations in the cloak of an IIED claim does not change this fate. Without substantially more, and particularly despicable, misconduct at issue, such as repeated use of racial slurs, personnel decisions do not meet the outrageousness element of the IIED tort. "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996).

/ / /

/ / /

/ / /

24. California courts have gone on to hold that even personnel decisions that stem from discriminatory motives are, without more, insufficient to satisfy the *extreme and outrageous* element of the IIED tort. For example, in *Light v. California Department of Parks and Recreation,* 14 Cal. App. 5th 75, 102 (2017), the court described a variety of retaliatory conduct by one of the defendants, Dolinar, that was not sufficiently "outrageous" for IIED purposes even when considered in the aggregate. That conduct included refusing to listen to the plaintiff's complaints about retaliation, encouraging efforts to silence the plaintiff, awarding a commendation to the harasser and participating "in the Department's retaliation against Light (including denying promised training and shifting Light's work location)." *Id*. The *Light* court held that even though "a reasonable trier of fact could conclude Dolinar acted improperly, and likely contributed to the Department's violation of FEHA's anti-retaliation provision, her actions are common—though ultimately misguided—supervisory actions." *Id.* On that basis, the court affirmed the grant of summary judgment in favor of that defendant on the plaintiff's IIED claim.

25. In yet another example of the high standard for IIED in the employment context, and particularly relevant here, an employee that proved her claim for retaliation after complaining about sexual harassment was held not to have established her IIED claim on the same facts:

> As we shall discuss, we conclude there was substantial evidence to support the jury's finding that respondents engaged in unlawful retaliation. Nevertheless, appellant's argument fails as to the intentional infliction claim. A "series of subtle, yet damaging, injuries" is sufficient to constitute retaliation; however, it does not necessarily rise to the "extreme and outrageous" standard required for an intentional infliction of emotional distress claim. [citations] Although appellant claimed she was faced with continued isolation and ostracism, we conclude respondents' conduct did not go 'beyond all bounds of decency.'

*McCoy*, 216 Cal. App. 4th at 295. Plaintiff's claim that Individual Defendants

participated in a decision not to return Plaintiff to work after a leave does not even approach the level of misconduct that was at issue in *McCoy* where the employee was actually experiencing day-to-day retaliatory harassment, which still did not meet the IIED standard.

26. Plaintiff was on a leave during the events he claims give rise to the IIED claim. He was not present at the worksite to interact with the Individual Defendants and therefore he did not directly witness or experience any of the alleged retaliatory conduct of the Individual Defendants leading up to his separation. IIED claims are meant to relate to shocking events in the presence of the victim that terrorize them in a way that causes immediate and significant injury. *Christensen v. Sup. Ct.*, 54 Cal. 3d 868, 905 (1991) ("In concluding that recovery was not available under an intentional infliction of emotional distress theory, we noted that to the extent such recovery had been allowed, it has been limited to 'the most extreme cases of violent attack, where there is some especial likelihood of fright or shock.'"). But Plaintiff cannot have been privy to any of the internal conversations and decision-making processes that he alleges resulted in his termination. Thus, it is only the actual act of denying his return to employment that can form the basis of his IIED claim and not any of the statements or conduct he never heard, saw, or experienced in any way. Understanding Plaintiff only personally knew of and experienced Oakley's alleged indifferent reaction to his purported injury and subsequent receipt of written notice he was being terminated a year later, Plaintiff's IIED claim must fail. As a matter of law, petty insults, failure to provide Workers' Compensation forms, and termination after a year of leave are not *outrageous and extreme* acts.

27. Moreover, Plaintiff's claims are plainly preempted by the exclusivity provisions of California's Workers' Compensation system. California Labor Code § 3600 "establishes the exclusive jurisdiction of the workers' compensation system by furnishing an employer immunity from civil

liability for any injury sustained by an employee ... arising out of and in the course of his or her employment." *LeFiell Mfg. Co. v. Superior Court*, 55 Cal.4th 275, 283 (2012). Tort claims arising out of the vast majority of an employer's adverse actions toward an employee are preempted by such principles. Misconduct that is attributed to the employer's actions "which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987).

28. Here, Plaintiff alleges that he was injured on the job and that his supervisor, Oakley, didn't take the injury seriously and failed to provide him with the proper paperwork to submit a Workers' Compensation claim. He further alleges he was not returned to work from a leave of absence relating to the same injury. Of course, Plaintiff ultimately did proceed in the Workers' Compensation forum, which is precisely where the rest of these claims should be adjudicated, including his inadequate IIED claim against Individual Defendants.

29. Plaintiff has no hope of amending his Complaint to state facts sufficient to meet the exacting standards of an IIED claim or escaping Workers' Compensation preemption. This is because Plaintiff was already deposed in the Workers' Compensation forum and his testimony therein delineated the factual bounds of Plaintiff's IIED claims, sealing their fate. Moreover, as mentioned, Plaintiff was on a leave of absence at the time he claims the Individual Defendants were engaging in the conduct that led to his allegedly retaliatory separation, which means he cannot amend the Complaint to add additional facts respecting extreme and outrageous conduct by the Individual Defendants because

1 he could not have been privy to their conduct and statements and thus cannot have been impacted thereby. *Larson v. UHS of Rancho Springs, Inc.*, 230 Cal. App. 4th 336, 343 (2014) (Amended factual allegations that ignore, contradict, or evade allegations in prior pleadings should be ignored as sham pleadings when evaluating the sufficiency of a complaint). Only Plaintiff's receipt of notice of his separation could have caused Plaintiff any emotional distress with respect to his claims of retaliation underlying the IIED claim.

30. Importantly, decisions about Plaintiff's leave of absence were made by a third-party administrator contracted with to administer Chemtool's employee leaves in coordination with a "Leave Management" human resources team and, thus, Individual Defendants had no involvement in making decisions relating to approval or denial of leave. Further, Individual Defendants cannot have conducted themselves in an *extreme and outrageous* manner with respect to Plaintiff's termination because the facility at which Plaintiff worked was sold to an independent company at the time of his separation and the Tehachapi employees were separated from Chemtool and transferred to the new company. It was not possible for Plaintiff to return to work because his position with Chemtool no longer existed, which means Individual Defendants could not have acted even mildly inappropriately with respect to Plaintiff's separation. Thus, Plaintiff has already pled all of the facts he can with respect to his IIED claim and those alleged facts fall far short of the *extreme and outrageous* standard. The Individual Defendants have, therefore, been improperly joined and cannot act as a barrier to removal.

/ / /

/ / /

/ / /

/ / /

/ / /

**THE AMOUNT IN CONTROVERSY REQUIREMENT IS MET**

31. Defendant need only show that it is more-probable-than-not that Plaintiff's claimed damages exceed the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Although Defendant expressly denies any liability for the damages alleged in Plaintiff's Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must presume that Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not the amount, if any, that Defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). Here, Plaintiff alleges ten causes of action in his Complaint, all stemming from his employment with Chemtool and his alleged wrongful termination therefrom, and claims lost past and future wages, emotional distress damages, punitive damages, and attorneys' fees and costs. The amount in controversy here meets the jurisdictional minimum because if Plaintiff were to prevail, there is a real likelihood that his damages will exceed $75,000. Between Plaintiff's compensatory damages based on his employment, his emotional distress damages, punitive damages, and his attorneys' fees and costs, there is a reasonably likelihood that Plaintiff's recovery if he were to prevail at trial exceeds $75,000.

32. For these reasons, this action is a civil action over which this Court has original jurisdiction pursuant to Section 1332, and which may be removed by Defendant to this Court pursuant to 28 U.S.C. section 1441 based on diversity jurisdiction.

/ / /

/ / /

/ / /

## NOTICE TO STATE COURT AND PLAINTIFF

33. Concurrently with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to counsel for Plaintiff, Benjamin Sampson of Bordin Semmer LLP. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California for the County of Kern.

Respectfully submitted,

Dated: June 30, 2023              RAINES FELDMAN LLP

By: /s/ Lauren J. Katunich
Lauren J. Katunich
Matthew Pate
Attorneys for Defendant
THE LUBRIZOL CORPORATION

3218777.2                              14
DEFENDANT'S NOTICE OF REMOVAL

# PROOF OF SERVICE

I am over the age of 18 and not a party to the within action; I am employed by Raines Feldman Littrell LLP and its business address is 1800 Avenue of the Stars, 12th Floor, Los Angeles, California 90067.

On June 30, 2023, I served the following document(s) described as NOTICE OF REMOVAL

☐ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

SEE ATTACHED SERVICE LIST

☐ **BY MAIL:** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of Raines Feldman LLP, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the practice of Raines Feldman LLP for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☒ **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in the attached service list.

☐ **BY OVERNIGHT DELIVERY:** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of Raines Feldman LLP, and addressed as shown on the attached service list, for collection and delivery to a courier authorized by _____ to receive said documents, with delivery fees provided for. I am readily familiar with the practices of Raines Feldman LLP for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by _____ on said date in the ordinary course of business.

☐ **BY FACSIMILE:** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

☐ **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the offices of the addressee(s) in the attached service list.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

3218884.1

1  Executed June 30, 2023 at Los Angeles, California.

_Dora Melendez_         *Dora Melendez*
Type or Print Name       Signature

3218884.1

**SERVICE LIST**

| | |
|---|---|
| BORDIN SEMMER LLP<br>Joshua Bordin-Wosk, Esq.<br>Benjamin A. Sampson, Esq.<br>6100 Center Drive, Suite 1100<br>Los Angeles, California 90045 | Attorneys for<br>Telephone: (323) 457-2110<br>Facsimile: (323) 457-2120<br>E-Mail: bsampson@bordinsemmer.com<br>jbordinwosk@bordinsemmer.com |
| Kelly A. Kosek<br>Senior Litigation Counsel<br>29400 Lakeland Blvd. Wickliffe, OH 44092 | Attorneys for The Lubrizol Corporation<br>Tel. (440) 347-1246<br>Fax: (440) 625-2019<br>Email: kelly.kosek@lubrizol.com |

3218884.1