UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT TREVINO,<br><br>        Plaintiff,<br><br>    v.<br><br>THE LUBRIZOL CORPORATION, et al.,<br><br>        Defendants. | No. 1:23-CV-01005-KES-CDB<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>Docs. 9, 16 |

Plaintiff Vincent Trevino ("plaintiff") moves to remand this action to Kern County Superior Court. Doc. 9 ("MTR"). Separately, defendants The Lubrizol Corporation ("Lubrizol"), Chemtool Incorporated ("Chemtool"), and Kevin Oakley ("Oakley"), move for judgment on the pleadings. Doc. 16 ("MJP"). The parties filed oppositions and replies to both motions. Docs. 13, 14, 18, 19. The Court took the motions under submission. Doc. 17. For the reasons set forth below, plaintiff's motion to remand is granted and defendants' motion for judgment on the pleadings is denied as moot.

///

///

1

1    **I.      Background**

2             On June 2, 2023, plaintiff brought this action against defendants in Kern County Superior

3    Court, alleging that defendants harassed, discriminated against, and retaliated against plaintiff in

4    response to his reports of hazardous conditions in the workplace and his seeking reasonable

5    accommodations for a medical condition or disability, ultimately leading to his wrongful

6    termination.  Doc. 1-2 ("Compl.").  In his complaint, plaintiff alleges several causes of action

7    arising under state law, including the Fair Employment and Housing Act ("FEHA"), California

8    Labor Code §§ 98.6 and 1102.5, and intentional infliction of emotional distress ("IIED"), among

9    others.

10            Lubrizol removed the action to this Court on June 30, 2023.  Doc. 1 ("Notice of

11   Removal").  In its notice of removal, Lubrizol asserts that this Court has subject matter

12   jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount

13   in controversy exceeds the $75,000 threshold.  *Id.* at 2.  Lubrizol argues that defendants Oakley

14   and Preston are fraudulently joined defendants and therefore their citizenship must be disregarded

15   for purposes of determining diversity jurisdiction.[1]  *Id.* ¶ 14.  In their motion for judgment on the

16   pleadings, filed October 24, 2023, defendants move to dismiss the IIED claim in its entirety,

17   arguing plaintiff's IIED claim fails to allege specific facts sufficient to support such a claim.  MJP

18   at 9.

19            Plaintiff moves to remand the action to Kern County Superior Court, arguing that his

20   complaint states sufficient facts to support an IIED claim against defendants Oakley and Preston,

21   whom plaintiff alleges are citizens of California.  MTR at 2, 8.  Therefore, plaintiff argues

22   diversity jurisdiction does not exist and the Court lacks jurisdiction over the action.  *Id.* at 8.

23   ///

24   ///

25   ///

26

27   [1] Plaintiff does not dispute that the amount-in-controversy exceeds $75,000.  MTR at 4.
     Defendants do not dispute that Oakley and Preston are citizens of California.  The dispute on the

28   motion to remand is whether the nondiverse parties were fraudulently joined.

2

1    **II.     Legal Standard**

2          A suit filed in state court may be removed to federal court if the federal court would have

3    had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  Removal is proper when a case

4    originally filed in state court presents a federal question or where there is diversity of citizenship

5    among the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331,

6    1332(a).

7          "If at any time before final judgment it appears that the district court lacks subject matter

8    jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Section 1447(c) "is strictly

9    construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to

10   the party invoking the statute."  *Acad. Of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061

11   (9th Cir. 2021) (quoting *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004);

12   *see also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003)

13   (holding that the defendant must prove, by a preponderance of the evidence, that removal is

14   proper).  As such, a federal court must reject jurisdiction and remand the case to state court if

15   there is any doubt as to the right of removal.  *Matheson*, 319 F.3d at 1090.

16         A court may exercise diversity jurisdiction over a matter when there is diversity of

17   citizenship among the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C.

18   § 1332(a).  An action may be removed to federal court based on diversity jurisdiction only where

19   there is complete diversity of citizenship between the parties.  *Hunter v. Phillip Morris USA*, 582

20   F.3d 1039, 1043 (9th Cir. 2009) (citing 28 U.S.C. §§ 1332(a), 1441(b)).  For diversity purposes, a

21   person is a citizen of a state if he or she is: (1) a citizen of the United States and (2) domiciled in

22   that state.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  An LLC is a

23   citizen of the state of which its owners or members are citizens.  *Johnson v. Columbia Props.*

24   *Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  A corporation is a citizen of the state in which

25   it is incorporated and the state in which its principal place of business is located.  *See, e.g.*, *id.*

26   (citing 28 U.S.C. § 1332(c)(1)).  "In determining whether a civil action is removable on the basis

27   of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be

28   disregarded."  28 U.S.C. § 1441(b)(1).

1    Similarly, "district courts may disregard the citizenship of a non-diverse defendant who

2    has been fraudulently joined." *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018).  A

3    defendant seeking to make out a claim of "fraudulent joinder bears a 'heavy burden' since there is

4    a 'general presumption against finding fraudulent joinder.'" *Id.* (quoting *Hunter v. Philip Morris*

5    *USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)).  To meet this "heavy burden," a defendant must show

6    either "(1) actual fraud in the pleading of jurisdictional facts, or (2) [an] inability of the plaintiff

7    to establish a cause of action against the non-diverse party in state court." *Id.*  Fraudulent joinder

8    can be "established the second way if a defendant shows that an 'individual joined in the action

9    cannot be liable on any theory.'" *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318

10   (9th Cir. 1998)).

11   If there is even a "*possibility* that a state court would find that the complaint states a cause

12   of action against any of the resident defendants, the federal court must find that the joinder was

13   proper and remand the case to the state court." *Id.* (quoting *Hunter*, 582 F.3d at 1046) (emphasis

14   in original).  "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has

15   not necessarily been fraudulently joined." *Id.* at 549.  Indeed, fraudulent joinder may be shown

16   when "a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not

17   possibly prevail on her claims," but *not* when a deficiency in the complaint could "possibly be

18   cured by granting the plaintiff leave to amend." *Id.* at 549–50.

19   **III.    Discussion**

20   Plaintiff pursues a cause of action for intentional infliction of emotional distress ("IIED")

21   against two nondiverse defendants, Oakley and Preston, who supervised plaintiff.  Under

22   California law, a cause of action for IIED exists when there is "(1) extreme and outrageous

23   conduct by the defendant with the intention of causing . . . emotional distress; (2) the plaintiff's

24   suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

25   emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 95 Cal. Rptr. 3d 636,

26   651 (Cal. 2009) (internal citations omitted).  Liability for IIED "does not extend to mere insults,

27   indignities, threats, annoyances, petty oppressions, or other trivialities." *Haley v. Cohen & Steers*

28   *Capital Mgmt., Inc.*, 871 F. Supp. 2d 944, 960 (N.D. Cal. 2012).  In the employer-employee

context, the Worker's Compensation Act ("WCA") generally provides the exclusive remedy for IIED claims, subject to two exceptions. *Langevin v. Federal. Exp. Corp.*, No. CV 14-08105 MMM (FFMx), 2015 WL 1006367, at *9 (C.D. Cal. Mar. 6, 2015). As long as the employer's conduct neither (1) "contravenes fundamental public policy," nor (2) "exceeds the risk inherent in the employment relationship," "an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." *Livitsanos v. Superior Court*, 7 Cal. Rptr. 2d 808, 815 (1992). Plaintiff argues that the alleged conduct by defendants violates fundamental public policy, and therefore the WCA's exclusive remedy does not apply. However, the California Supreme Court has held that "[t]he exception for conduct that 'contravenes fundamental public policy' is aimed at permitting a *Tameny* action to proceed despite the workers' compensation exclusive remedy rule." *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 902–03 (2008). In other words, this public policy exception does not apply, as the "*Livitsanos* public policy exception operates only to permit *Tameny* actions for wrongful termination in violation of public policy, not IIED claims." *Langevin*, 2015 WL 1006367, at *10 (citing *Miklosy*, 44 Cal. 4th at 902–03).

As for the second exception, conduct that exceeds the risk inherent in the employment relationship, courts have established "no bright line test in determining what behavior is part of the employment relationship." *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1181 (N.D. Cal. 2003). Accordingly, "gauging whether an IIED claim arises from actions within the normal part of the employment relationship . . . is a heavily fact intensive inquiry into the nature of the defendants' conduct." *Hassler v. Talbots, Inc.*, No. CV-19-5793-DMG (FFMx), 2019 WL 4221390, at *3 (C.D. Cal. Sep. 5, 2019) (citing *Calero*, 271 F. Supp. 2d at 1181) (internal quotations omitted).

Plaintiff alleges in his initial complaint, and intends to amend his complaint to further allege, several instances in which defendants Oakley and Preston acted to inflict emotional distress on him. From approximately August 2021 to November 2021, plaintiff suspected the air quality was unsafe for employees at the worksite and reported the unsafe condition to his superiors and the Head of Safety, Randy Stephanie. Compl. ¶ 18. Plaintiff alleges that Stephanie

took no action to address the issue.[2]  *Id.*  Plaintiff intends to amend his complaint to specifically allege that Oakley would "regularly berate and make false accusations" against plaintiff in retaliation for his reporting of unsafe conditions.  MTR at 8.

Even if such allegations rise to the level of extreme and outrageous conduct, any IIED claim before plaintiff was injured is barred by the WCA.  Plaintiff alleges discriminatory treatment based on his medical condition or disability after he was injured.  Any alleged conduct prior to plaintiff's injury would be rooted in whistleblower retaliation, but the California Supreme Court has rejected the contention that whistleblower retaliation is outside the scope of risk inherent to the employment relationship.  *See Miklosy*, 44 Cal. 4th at 903; *Langevin*, 2015 WL 1006367, at *12 ("The retaliatory acts alleged . . . writing [plaintiff] up for pretextual and fabricated reasons; yelling and screaming at him; seeking 'dirt' on [plaintiff] that could be used to discipline or demote him; being hostile to him . . . fall[] within the normal risks inherent in the employment relationship.").  Accordingly, any IIED claim based on conduct preceding plaintiff's injury fails as a matter of law.

On November 4, 2021, immediately after plaintiff inhaled a caustic substance at work, plaintiff reported his injury to Oakley and sought medical care.  Oakley allegedly took no action to assist plaintiff, and nonchalantly responded to plaintiff's request to seek medical care by saying "you can do what you want to do."  Compl. ¶ 19.  Oakley's alleged "nonchalant" remarks do not rise to the level of extreme and outrageous conduct necessary to support an IIED claim.  *See Haley*, 871 F. Supp. 2d at 960; *Schneider v. TRW, Inc.*, 938 F.2d 986, 992–93 (9th Cir. 1991) (granting summary judgment in favor of employer where employee alleged supervisor "screamed and yelled in the process of criticizing her performance, threatened to throw her out of the department and made gestures she interpreted as threatening.").  Plaintiff does not allege any

---

[2] While plaintiff does not explicitly name his superiors in the factual background of his complaint, Compl. ¶ 18, in his specific cause of action for IIED, plaintiff alleges Oakley and Preston retaliated against him for his reporting of unsafe conditions.  *Id.* ¶ 79.  Resolving all ambiguities in favor of plaintiff, plaintiff's "superiors" will be construed to include Oakley and Preston.  *See Manguno v. Prudential Prop & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.").

1    other conduct by Oakley or Preston on the day of plaintiff's injury.  Nor does he argue that he

2    would allege in an amended complaint any additional conduct that day sufficient to state an IIED

3    claim.  Therefore, any IIED claim based on conduct by Oakley when plaintiff reported his injury

4    and sought medical care on November 4, 2021 similarly fails as a matter of law.

5         Following his injury on November 4, 2021, until his termination on November 4, 2022,

6    plaintiff alleges Oakley and Preston "actively retaliated against plaintiff by working to ensure he

7    not return to work," and in doing so discriminated against him due to his medical condition and

8    disability resulting from the incident.  Compl. ¶¶ 22–25.  While, as currently stated, these

9    conclusory allegations do not support a viable IIED claim, plaintiff states that he intends to

10   amend his complaint to allege that Oakley used false allegations against plaintiff as a pretextual

11   basis to terminate plaintiff's employment for discriminatory reasons.  MTR at 8; *see Grancare*,

12   889 F.3d at 550.  Defendants argue that any such amendment would lack evidentiary support and

13   be frivolous.  Doc. 13 at 20.  Specifically, defendants contend that plaintiff was on leave and

14   therefore was never in the presence of Oakley and Preston from the time he was injured to his

15   termination on November 4, 2022.  *Id.*  Therefore, any conduct would have to have been by

16   written communication between the parties, and plaintiff would have either supplied evidence of

17   such communication in his initial complaint or in his motion to remand.  Additionally, defendants

18   contend that Oakley and Preston were not employed at the time of plaintiff's termination, so they

19   could not have made the decision to terminate him.  *Id.*  Finally, defendants argue that as

20   plaintiff's leave was managed by a third party, any requests to extend plaintiff's medical leave

21   and decision to terminate plaintiff would have been made by the third party, not defendants.  *Id.*

22        Defendants' argument is unavailing, as such factual disputes cannot serve as the basis of a

23   finding of fraudulent joinder.  *See Grancare*, 889 F.3d at 549 ("We have declined to uphold

24   fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into

25   the merits of the plaintiff's case, even if that defense, if successful, would prove fatal."); *but see*

26   *id.* at 548 (collecting cases in the limited instances where the Ninth Circuit has upheld rulings of

27   fraudulent joinder, such as claims barred by statutes of limitations, conduct that was privileged

28   under state law, or claims predicated on contracts to which the defendant was not a party).

1    Plaintiff intends to amend his complaint to allege that Oakley and Preston "concocted a plan of

2    retaliation against plaintiff for seeking an accommodation for his disability."  MTR at 8.  In an

3    amended complaint, plaintiff could dispute defendant's assertions that plaintiff did not

4    communicate with Oakley and Preston during his medical leave, or that Oakley and Preston did

5    not communicate discriminatory statements to the third party in support of the third party's

6    decision to terminate plaintiff's employment.

7        Such allegations that Oakley and Preston caused plaintiff severe emotional distress in

8    terminating him based on his medical condition or disability could support a colorable IIED

9    claim.  *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1102 (S.D. Cal. 2020)

10   ("Where there remains a claim for disability discrimination, courts have held that an IIED claim

11   is not preempted by the WCA.") (collecting cases); *Light v. Dept. of Parks & Rec.*, 221 Cal. Rptr.

12   3d 668, 687 (Cal. Ct. App. 2017) ("A number of California authorities have concluded claims for

13   IIED in the employment context may be asserted where the actionable conduct also forms the

14   basis for a FEHA violation.") (collecting cases).  Therefore, defendants have not met their heavy

15   burden of demonstrating that there is not any "non-fanciful possibility" that plaintiff could amend

16   his complaint to make out a colorable IIED claim against Oakley or Preston based on

17   discriminatory conduct following plaintiff's injury on November 4, 2021.  *See Grancare*, 889

18   F.3d at 548.  Accordingly, Oakley and Preston were not fraudulently joined, and their California

19   citizenship destroys complete diversity, depriving this Court of jurisdiction.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**IV.    Conclusion and Order**

Accordingly:

1.  Plaintiff's motion to remand, Doc. 9, is GRANTED;

2.  Defendants' motion for judgment on the pleadings, Doc. 16, is DENIED as moot;

3.  This action is REMANDED to Kern County Superior Court for lack of subject matter jurisdiction;

4.  The Clerk of Court shall mail a copy of this order to the clerk of Kern County Superior Court; and

5.  The Clerk of Court is directed to close this case.


IT IS SO ORDERED.

Dated:    March 21, 2025

_____
UNITED STATES DISTRICT JUDGE